">

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA ALLIANCE OF PUBLICLY OWNED TREATMENT WORKS, and CENTRAL VALLEY CLEAN WATER ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; JARED BLUMENFELD, REGIONAL ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION IX; and DOES 1 to 10,<br><br>Defendants. | No. 2:14-cv-01513-MCE-DAD<br><br>**MEMORANDUM AND ORDER** |

Currently before the Court are Cross-Motions for Summary Judgment and Plaintiffs' Motion to Compel Defendants to Complete the Administrative Record. For the following reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 25) is DENIED and Defendants' Cross-Motion for Summary Judgment (ECF No. 30) is GRANTED. Plaintiffs' Motion to Compel (ECF No. 36) is DENIED as moot.[1]

---

[1] Because oral argument would not have been of material assistance, the Court ordered both of these matters submitted on the briefs. E.D. Cal. L. R. 230(g); ECF No. 50.

1

# BACKGROUND

The Southern California Alliance of Publically Owned Treatment Works ("SCAP") and the Central Valley Clean Water Association ("CVCWA") (collectively, "Plaintiffs") are organizations whose members treat and recycle wastewater. Pursuant to the Clean Water Act, Plaintiffs' members must obtain National Pollutant Discharge Elimination System ("NPDES") discharge permits in order to release treated water into the environment. These permits are issued by the California Regional Water Quality Control Boards, the State Water Resources Control Board ("State Water Board"), and sometimes the United States Environmental Protection Agency ("EPA"). However, it is the EPA that promulgates formal methods for determining whether discharged water is deemed "toxic."

On February 12, 2014, the State Water Board asked the EPA to approve a new method of testing for water toxicity known as the two-concentration Test of Significant Toxicity ("TST"). Generally, the approval of a new water toxicity testing method is subject to the federal rulemaking process outlined in the Administrative Procedure Act ("APA"). However, under limited circumstances, an entity or individual may request to use an Alternative Test Procedure ("ATP") that has not been previously approved and formally promulgated by the EPA. See 40 C.F.R. §§ 136.4, 136.5. The EPA's Regional Alternate Test Procedure Coordinator has the discretion to restrict the use of the alternate test procedure to a specific facility, or "to all discharger[s] or facilities (and their associated laboratories) specified in the approval for the Region." See id. § 136.5. On March 17, 2014, the EPA approved the two-concentration TST test design as an ATP and allowed the use of this new toxicity test method in NPDES permits issued in California.

On June 25, 2014, Plaintiffs filed this action alleging that Defendants EPA and Jared Blumenfeld as the Regional Administrator of EPA Region IX (collectively "Defendants") violated the APA, 5 U.S.C. §§ 551-559, and regulations implementing the

Clean Water Act, 33 U.S.C. §§ 1251-1376. Specifically, Plaintiffs allege that Defendants illegally and improperly approved the State Water Board's request to use a newly formulated methodology as an ATP. This case was brought by Plaintiffs in order to overturn the ATP approval and to obtain a permanent injunction against future use of the two-concentration TST test design absent compliance with notice-and-comment rulemaking. Concurrent with the filing of the complaint, Plaintiffs sought a temporary restraining order from the Court, which was later denied due to delay. Because there was no restraining order in place, NPDES permits containing the two-concentration TST test were issued while the parties litigated this case.

On February 11, 2015—just before Defendants' Reply to its Cross-Motion for Summary Judgment was due—the EPA withdrew its ATP approval of the two-concentration TST testing method "effective immediately."[2] McNaughton Decl., Exh. A, ECF No. 40-1, at 4. Defendants acknowledge that the withdrawal "arose because of this litigation." Defs.' Reply, ECF No. 40, at 9:7. Because of this withdrawal, Defendants argue that the case is now moot. The Court agrees.

**STANDARD**

The Constitution limits jurisdiction of federal courts to the consideration of "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Nw. Envtl. Def. Ctr. V. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988). When a case becomes moot, federal courts lose jurisdiction. Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992). The central inquiry in determining whether a case is moot

---

[2] Due to the timing of EPA's withdrawal, the Court allowed additional briefing on the issue of mootness. See ECF No. 44.

is "whether there can be any effective relief." Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001).

Voluntary cessation of challenged conduct does not ordinarily render a case moot because that conduct could be resumed as soon as the case is dismissed. City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1983). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to reoccur." Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., 528 U.S. 167, 190 (2000).

Additionally, "[a] case otherwise moot will still be heard if it presents an issue that is capable of repetition while evading review." Pub. Utils. Comm'n of Cal. v. FERC, 100 F.3d 1451, 1459 (9th Cir. 1996). However, this exception "applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983). "When resolution of a controversy depends on facts that are unique or unlikely to be repeated, the action is not capable of repetition and hence is moot." FERC, 100 F.3d at 1460. To fall under this exception, a controversy must also pertain to "a challenged action [that] was in its duration too short to be fully litigated prior to its cessation or expiration." Murphy v. Hunt, 455 U.S. 478, 482 (1982).

## ANALYSIS

Plaintiffs first argue that their request for injunctive relief is not moot because the Court retains the power "to enjoin Defendants from renewing the challenged practice." Pls.' Surreply, ECF No. 45, at 2:22-23. But it is highly unlikely that this exact situation will occur again in the future. This is especially true in this case, where Plaintiffs brought an as-applied challenge to the EPA's use of the ATP process in this particular instance and not a facial challenge to the regulation authorizing ATPs. Thus, the focus of the Court is

on the record that was before the agency when a decision was made and whether the agency's decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" in light of the record.  5 U.S.C. § 706(2)(A).  Even if the State Water Board were to submit a new ATP request for this exact testing procedure, any decision on that request would be the result of a new proceeding on a new record.  See Californians for Alts. to Toxics v. Troyer, No. 2:05-cv-1633-FCD-KJM, 2006 WL 464084, *5 (E.D. Cal. Feb. 27, 2006) (finding a case moot because any future project "would be based on a different project proposal, data, expert opinions, and scientific information").

Additionally, there are facts particular to this ATP approval that are very unlikely to reoccur.  For instance, in its request, the State Water Board incorrectly cited to the provision for nationwide ATPs (40 C.F.R. § 136.4) rather than the provision for limited-use ATPs (40 C.F.R. § 136.5).  Also, Plaintiffs' claims are partially based on a regulation error within section 136.5 that the EPA is in the process of amending.  See McNaughton Decl., Exh. A, ECF No. 40-1.  Thus, any opinion issued by the Court would be only an advisory opinion to the EPA on the proper use of the ATP process and not a ruling on a current controversy.  See Church of Scientology, 506 U.S. at 12 (declaring that courts do not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it").

Next, Plaintiffs argue that the voluntary cessation exception to the mootness doctrine applies.  Plaintiffs argue that "this withdrawal seems to have been strategically timed to avoid the entry of an adverse judgment against EPA in this case, and to avoid having to reveal the entire administrative record to this Court."  Pls.' Surreply, ECF No. 45, at 1-2. But the Court finds that EPA's voluntary withdrawal is entitled to a presumption of good faith.  See American Cargo Transp., Inc. v. United States, 625 F.3d 1176, 1180 (9th Cir. 2010) ("unlike in the case of a private party, we presume the government is acting in good faith").

///

In order to show that voluntary compliance moots a case, Defendants must show "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to reoccur." Friends of the Earth, 528 U.S. at 190.  Plaintiffs argue that the EPA did not repudiate the policy of using the ATP process to approve this type of toxicity test on such a large scale, and thus the wrongful behavior could occur again.  In fact, in the letter withdrawing the ATP approval, the EPA stated "should the State wish to pursue such an ATP, a new ATP application would be required," leaving open the possibility of another application.   McNaughton Decl. at 4.

Even so, the chance of this situation reoccurring is slim.  The EPA cannot initiate the ATP process.  See FERC, 100 F.3d at 1460 (9th Cir. 1996) (finding the case moot where defendant vacated its orders, which is the relief plaintiff requested, and could not reinstate them absent action from another party).  And there is no indication that the State Water Board will submit another ATP request to the EPA to use the two-concentration TST test method for all of California.   See Rosemere Neighborhood Ass'n v. U.S. EPA, 581 F.3d 1169, 1175 (9th Cir. 2009) (stating that "the government cannot escape the pitfalls of litigation by simply giving in to plaintiff's individual claim without renouncing the challenged policy" but only "where there is a reasonable chance of the dispute arising again between the government and the same plaintiff") (emphasis added).  Here, Plaintiffs would only be affected by a future action that would affect the permit contents in their regions of California.[3]  Unlike in Rosemere, there is no pattern of behavior that makes future litigation between Plaintiffs and Defendants likely.  See id. Finally, as stated above, the exact circumstances of this case are unlikely to occur again as any new ATP application and subsequent decision would be based on a new record and an amended regulation.  Thus, the Court finds that Defendants met their "formidable burden" of showing that this exception does not apply.  Friends of the Earth, 528 U.S. at 190.

---

[3] Thus, Plaintiffs' argument that an employee of EPA previously expressed a desire to authorize the use of this toxicity test via the ATP process in Hawaii is unavailing.

There is a lingering harm from the few permits containing the two-concentration test design that were issued while the ATP was in effect. The EPA's withdrawal letter does not prevent EPA or others from enforcing any permit that contains provisions based upon the ATP approval Letter. However, contrary to Plaintiffs' assertions otherwise, that does not make this case analogous to cases where trees had already been logged or wetlands had already been destroyed and the Court retained jurisdiction to right these wrongs. See Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1065 (9th Cir. 2002); Friends of the Payette v. Horshoe Bend Hydroelectric Co., 988 F.2d 989, 995-96 (9th Cir. 1993). The harm here is fixable only by changing the contents of the permits.

The contents of these permits are already being challenged in a state court action, which is the appropriate venue to challenge the contents of individual NPDES permits. See 40 C.F.R. § 123.30 (judicial review of permits issued by the State are reviewed in state court); Cal. Water Code §§ 13320, 13321, 13330 (providing for review and petition for stay by state board, and review in superior court); Shell Oil Co. v. Train, 585 F.2d 408, 414 (9th Cir. 1978) ("The existence of a state judicial forum for the review of the regional board's action forecloses the availability of the federal forum under the terms of the" APA); ECF No. 9-2 (SCAP member Camarillo Sanitation District's petition for stay); Stuber Decl., Exh. E, ECF No. 30-2 (SCAP member L.A. County Sanitation District's petition). Essentially, a challenge to EPA's now withdrawn decision to approve the ATP request could be heard in federal court,[4] whereas challenges to the state administrative agency's decision to include the two-concentration TST test in permits can only be brought in state court. Thus, this Court lacks jurisdiction over those permit challenges. Boise Cascade Corp. v. U.S. EPA, 942 F.2d 1427, 1430 (9th Cir. 1991).

Though not explicitly argued by Plaintiffs, the Court also finds that the "capable of

---

[4] The Court acknowledges that there is a dispute about whether this challenge can be heard in the district court or whether the action must be filed in the appropriate court of appeals under the Clean Water Act's section 509(b)(1). Given the Court's determination that this case is moot, this issue does not need to be decided and will not be addressed.

7

repetition while evading review" exception also does not apply given the unique circumstances of this case.  See FERC, 100 F.3d at 1460 ("When resolution of a controversy depends on facts that are unique or unlikely to be repeated, the action is not capable of repetition and hence is moot.")

Therefore, the Court finds that this case is moot and that neither of the potential exceptions to the mootness doctrine applies.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (ECF No. 25) is DENIED and Defendants' Motion for Summary Judgment (ECF No. 30) is GRANTED.  Plaintiffs' Motion to Compel (ECF No. 36) is DENIED as moot. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  May 13, 2015

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT