UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA ALLIANCE OF PUBLICLY OWNED TREATMENT WORKS and CENTRAL VALLEY CLEAN WATER ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; JARED BLUMENFELD, REGIONAL ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION IX; and DOES 1 to 10,<br><br>Defendants. | No. 2:14-cv-01513-MCE-DAD<br><br>**MEMORANDUM AND ORDER** |

This case was closed on May 15, 2015 after the Court determined that the action was moot. ECF No. 51. On June 4, 2015, Plaintiffs filed a Motion for Reconsideration based on newly discovered evidence. ECF No. 53. For the following reasons, Plaintiffs' Motion for Reconsideration is GRANTED..[1]

///

---

[1] The parties stipulated to a revised briefing schedule for this Motion and vacated the hearing that was set for July 23, 2015. See ECF Nos. 54, 55. The Court did not find argument would be of material assistance, and this matter was decided on the briefs. E.D. Cal. Local R. 230(g).

# BACKGROUND

The Southern California Alliance of Publically Owned Treatment Works ("SCAP") and the Central Valley Clean Water Association ("CVCWA") (collectively "Plaintiffs") are organizations whose members treat and recycle wastewater. Pursuant to the Clean Water Act, Plaintiffs' members must obtain National Pollutant Discharge Elimination System ("NPDES") permits in order to release treated water into the environment. These permits are issued by the California Regional Water Quality Control Boards, the State Water Resources Control Board ("State Water Board"), and sometimes the United States Environmental Protection Agency ("EPA"). However, it is the EPA that promulgates formal test methods for determining whether discharged water is deemed "toxic." The permits contain monitoring requirements that "must be conducted according to test procedures approved under 40 CFR part 136." 40 CFR 122.41(j)(4). The formally approved test procedures include the whole effluent toxicity ("WET") test methods, which measure the biological effects (survival, growth, and/or reproduction) on aquatic organisms exposed to environmental samples.

In 2002, the EPA ratified a number of biological WET test methods to be applicable for use in the NPDES program.[2] 67 Fed. Reg. 69,952, Nov. 19, 2002. As part of this modification, EPA added a section to each method's test review manual that included recommended statistical methodologies for analyzing WET test biological data. The WET test manuals recommend, but do not require, select statistical analyses to be applied to WET test results.[3] AR002357.[4]

///

---

[2] "Beyond assessing WET data for the NPDES Program, WET tests are used to assess toxicity of receiving water . . . and stormwater samples." AR001841.

[3] Plaintiffs dispute this fact and argue that only "formally promulgated statistical method[s]" can be used. Pls.' Reply, ECF No. 57, at 4:6 (citing to the four specified statistical methods for hypothesis testing identified in the 2002 rule).

[4] All citations to the Administrative Record are denoted in this format and refer to the record filed with the Court on October 15, 2014. See ECF No. 22.

In 2010, EPA published a guidance document ("2010 Guidance") regarding a new method of analyzing WET test data for the NPDES program—the Test of Significant Toxicity ("TST").  Pursuant to 40 CFR 136, all WET test methods must be conducted using five concentrations and a control.[5]  However, it is possible to conduct the TST statistical approach using only two concentrations:  the effluent at the critical concentration and a control.  If the effluent and the control differ by an unacceptable amount (the amount that would have a measured detrimental effect on the ability of aquatic organisms to thrive and survive), then the effluent sample is declared toxic.

In May 2013, the Deputy Regional Administrator of EPA's Region 9 sent a memorandum to EPA headquarters asking for clarification of the minimum number of test concentrations required to appropriately utilize the TST approach.  AR000030-32.  In response, a headquarters representative stated that the two-concentration design was not acceptable as the promulgated WET methods require "a control plus five effluent concentrations under the methods' test acceptability criteria."  AR000028.[6]  The response went on to state, however, that use of the two-concentration TST approach could be accomplished by use of the Alternate Test Procedure ("ATP") process laid out in 40 CFR parts 136.4 and 136.5.  AR000028-29.

An ATP request can either be nationwide (40 CFR 136.4) or for limited use (40 CFR 136.5).  While nationwide requests must be approved by the National Coordinator, a limited use request can be approved by the EPA's Regional ATP Coordinator, who has the discretion to restrict the use of the ATP to a specific facility or "to all discharger[s] or facilities (and their associated laboratories) specified in the approval for the Region."  40 CFR 136.5.

///

---

[5] Part 136.7 requires that "a permittee/laboratory shall use suitable [quality assurance and quality control] procedures when conducting compliance analyses . . . ."  The promulgated 2002 Methods state that toxicity tests generally have "a minimum of five effluent concentrations."  AR002679, Section 2.2.2.

[6] The Court notes that this exchange mimicked an informal email chain between Region 9 and EPA headquarters that took place in 2012. See AR000040-43.

On February 12, 2014, the State Water Board asked the Regional ATP Coordinator to approve the two-concentration TST as an ATP for all of California. In error, the request referred to 40 CFR 136.4, despite the fact that the request did not ask for the approval of a nationwide ATP. On March 17, 2014, the EPA approved the two-concentration TST test design as a limited use ATP for NPDES permits issued in California, finding that the two-concentration TST approach was an acceptable equivalent to the five-concentration test evaluated using NOEC-LOEC[7] hypothesis testing.

On June 25, 2014, Plaintiffs filed this action alleging that Defendants EPA and Jared Blumenfeld, as the Regional Administrator of EPA Region 9, (collectively "Defendants") violated the Administrative Procedure Act, 5 U.S.C. §§ 551-559, and regulations implementing the Clean Water Act, 33 U.S.C. §§ 1251-1376. Specifically, Plaintiffs allege that Defendants illegally and improperly approved the State Water Board's request to use a newly formulated methodology as an ATP. Plaintiffs filed this action in order to overturn the ATP approval and to obtain a permanent injunction preventing the EPA from "mandating the use of the two-concentration TST or use of analytical results obtained using this non-promulgated method for NPDES compliance determination or other Clean Water Act purposes." First Am. Compl. ("FAC"), ECF No. 15, Prayer for Relief ¶ E. Concurrent with the filing of their original complaint, Plaintiffs sought a temporary restraining order from the Court, which was later denied due to delay. Because there was no restraining order in place, NPDES permits containing the two-concentration TST test were issued while the parties litigated this case.

On February 11, 2015—just before Defendants' Reply to its Cross-Motion for Summary Judgment was due—the EPA withdrew its ATP approval of the two-concentration TST testing method "effective immediately."[8] McNaughton Decl., Ex. A,

---

[7] Traditionally, when hypothesis tests are used to analyze toxicity test data, the results of the test are given in two endpoints, the No-Observed-Effect-Concentration (NOEC) and the Lowest-Observed-Effect-Concentration (LOEC). AR002356.

[8] Due to the timing of EPA's withdrawal, the Court allowed additional briefing on the issue of mootness. See ECF No. 44.

1  ECF No. 40-1, at 4.  Defendants acknowledged that the withdrawal "arose because of
2  this litigation."  Defs.' Reply, ECF No. 40, at 9:7.  Because of this withdrawal, the Court
3  found the case to be moot on May 15, 2015.
4         Specifically, the Court held that it was "highly unlikely that this exact situation will
5  occur again in the future" and any future case about the issuance of an ATP to approve
6  the two-concentration TST approach would be based on a new record.  ECF No. 51 at 4.
7  Additionally, the Court stated the allegedly wrongful behavior could not reasonably be
8  expected to reoccur because "[t]he EPA cannot initiate the ATP process . . . . [a]nd there
9  is no indication that the State Water Board will submit another ATP request to the EPA to
10 use the two-concentration TST test method for all of California."  Id. at 6 (internal
11 citations omitted).  In regard to the permits containing the two-concentration TST
12 approach that had been issued while the litigation was pending, the Court held that state
13 court was the "appropriate venue to challenge the contents of an individual NPDES
14 permit."  Id. at 7.
15        On June 4, 2015, Plaintiffs filed a Motion for Reconsideration citing new evidence
16 in the form of a State Water Board internal memorandum ("the Memo") discussing the
17 effect of the EPA's withdrawal of the State Water Board's ATP request on future NPDES
18 permitting.  ECF No. 53-1, Ex. A.  The Memo states that "[t]he three reasons for
19 withdrawal, as described in the rejection letter, are clearly identified as procedural errors"
20 and that the withdrawal was not based on "the substantive TST statistical analysis or the
21 scientific validity of a two-concentration test design."  Id.  The Memo goes on to state
22 that once the EPA makes changes to the ATP regulations through a proposed
23 rulemaking, the State Water Board "will resubmit the ATP request in the proper format."
24 Id.  The Memo provides a table showing that the five-concentration test design must be
25 used for effluent testing but that the two-concentration method can be used for storm
26 water and receiving water as those water sources are not subject to the same five-
27 concentration test requirements found in 40 CFR 136.3.[9]  The Memo concludes by

---

[9] This is because the methods manuals for receiving water and storm water recommended a two-

stating:

> With the withdrawal of the two-concentration test design approval, an NPDES permit can still require the TST for statistical analyses, but only the biological responses from the permitted Instream Waste Concentration (IWC) and the control (effluent concentration of zero) are utilized.

Id.

In between the filing of this Motion and the filing of the Reply, Plaintiffs acquired more documentation from a previous Freedom of Information Act ("FOIA") request.[10] Pls.' RJN, ECF No 58.  Plaintiffs argue that these documents show that "EPA has demonstrated a clear pattern and practice of utilizing, and encouraging the State to utilize, the 2010 guidance documents to set chronic toxicity permit limits and monitoring requirements."  Pls.' Reply at 3.  Accordingly, Plaintiffs urge the Court to retain jurisdiction over this case to determine whether EPA can do so without formally promulgating the TST approach as a recommended WET test statistical analysis approach, like those listed in the 2002 rule.  Currently, the TST approach has only been discussed in the 2010 Guidance.   While the EPA is in the process of updating 40 CFR 136, the proposed rule does not contain a reference to the TST approach.  See Clean Water Act Methods Update Rule for the Analysis of Effluent; Proposed Rule, 80 Fed. Reg. 8596 (Feb. 19, 2015), available at http://www.gpo.gov/fdsys/pkg/FR-2015-02-19/pdf/2015-02841.pdf).

///

///

///

///

---

concentration experimental design.

[10] The documents include:  recently issued permits that contain the TST statistical analysis (Exhibits and C); a letter to Plaintiffs' counsel regarding the FOIA request (Exhibit B); an email chain between EPA Region 9 staff members about the withdrawal of the ATP approval (Exhibit D); three orders requiring use of the TST (Exhibits E, I, and J); two email chains regarding how the TST approach should be utilized in NPDES permits (Exhibits F and G); a PowerPoint presentation about the TST approach (Exhibit H); a permit quality review from the State of Hawaii (Exhibit K; and a permit fact sheet for the Guam Waterworks Authority (Exhibit L).

## STANDARD

A motion for reconsideration is properly brought pursuant to either Federal Rule of Civil Procedure 59(e) or Rule 60(b).  Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989). Under Rule 59(e), three grounds may justify reconsideration:  (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.  Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009).

In addition, Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Further, Local Rule 230(j) requires that a motion for reconsideration state "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion," and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal., Local Rule 230(j)(3)-(4).

It is a well-established maxim that a court should not revisit its own decisions unless extraordinary circumstances show that its prior decision was wrong.  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988).  Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for relief. Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981); see Sheets v. Terhune, No. 1:08-cv-1056-SRB, 2010 WL 1287078, at *1 (E.D. Cal. Mar. 30, 2010) (holding that "[s]uch motions should not be used for the purpose of

asking a court 'to rethink what the court had already thought through—rightly or wrongly'"). Motions for reconsideration are therefore not intended to "give an unhappy litigant one additional chance to sway the judge." Kilgore v. Colvin, No. 2:12-cv-1792-CKD, 2013 WL 5425313, at *1 (E.D. Cal. Sept. 27, 2013) (quoting Frito-Lay of P.R., Inc. v. Canas, 92 F.R.D. 384, 390 (D.P.R. 1981)). A motion for reconsideration should not be used to raise arguments or present evidence that could have reasonably been raised or presented earlier. Marlyn Nutraceuticals, 571 F.3d at 880 (citing Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)). In order to succeed, a party making a motion for reconsideration must "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Pritchen v. McEwen, No. 1:10-cv-02008-JLT HC, 2011 WL 2115647, at *1 (E.D. Cal. May 27, 2011) (citing Kern-Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 656 (E.D. Cal. 1986) aff'd in part, rev'd in part, 828 F.2d 514 (9th Cir. 1987)).

## ANALYSIS

Plaintiffs bring this Motion for Reconsideration on the basis of the discovery of new evidence. Relief from judgment based on newly discovered evidence is warranted when (1) the moving party provides "newly discovered evidence"; (2) the moving party demonstrates that prior due diligence could not have discovered this evidence; and (3) this new evidence likely would have changed the disposition of the case. Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003).

Defendants argue that Plaintiffs fail to meet the first two prongs of this test. The Court disagrees. Evidence constitutes "newly discovered evidence" when the moving party did not possess the evidence, or was not aware of its existence, prior to entry of judgment. Id. Plaintiffs did not become aware of the Memo until June 1, 2015, more than two weeks after the Court's entry of judgment on May 15, 2015. Consideration of "newly discovered" information is warranted when evidence of such information "could

not have been discovered through due diligence." United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001). Plaintiffs uncovered the Memo, an internal document, and filed their Motion for Reconsideration within weeks of the document's issuance on May 12, 2015. The Court is satisfied that Plaintiffs could not have obtained the Memo sooner through due diligence. As such, the focus of this Order is whether the Memo would "have been likely to change the disposition of the case." Feature Realty, 331 F.3d at 1093.

Both the Memo and the FOIA documents submitted by Plaintiffs suggest that the TST approach had previously been utilized in NPDES permits and will continue to be utilized, sometimes with a five-concentration method and other times with the two-concentration method depending on the type of water that is being tested. While Plaintiffs state that the Court determined that this case was moot because "the Court believed Plaintiffs were no longer at risk of obtaining permits under the TST testing method because EPA had already withdrawn its approval of this testing method," Pls.' Mot., ECF No. 53-1, at 3:12-14, this is incorrect.

The Court believed that Plaintiffs were not at risk for obtaining permits containing the two-concentration TST approach under the authority granted to the State Water Board by the ATP. The Court was not under the illusion that withdrawal of the ATP approval would also withdraw the 2010 Guidance document that discussed the TST as an available statistical method. Nor would it affect the permits that had been issued prior to the ATP that incorporated the TST. The fact that the TST approach had been used previously in other NPDES permits was not new information. In fact, it was contained in the ATP request from the State Water Board, which Plaintiffs' attached to their Complaint. The request explicitly states:

> The TST approach is currently being used to implement Tribal and Territory NPDES permits issued by US EPA Region 9, as well as the US EPA Region 9 offshore oil and gas general permit (NO. CAG280000). The State Water Board has included provisions requiring the use of the TST approach in the Caltrans general permit for storm water discharges (Order No. 2012-0011-DWQ), the NPDES permit

>       issued to the US Department of the Navy's San Diego Naval base (Order No. R9-2013-0064), the San Diego Regional Water Quality Control Board's general permit for discharges from boatyards and boat maintenance and repair facilities (Order No. R9-2013-0026), and the NPDES permit issued to the US Department of the Navy's San Diego Naval base (Order No. R9-2013-0064). The TST approach has also been incorporated into several NPDES permits in Hawaii.

ECF No. 1, Ex. A, at 2.

      The Court determined that the case was moot because the case centered entirely around the ATP request and its approval, and that issue was now moot. Plaintiffs now request that the Court "rule on the merits that the TST is not an approved Part 136 method that can be utilized in NPDES permits, and cannot be lawfully approved as an ATP."[11] Pls.' Mot. at 9. According to Plaintiffs, this issue is <u>not</u> moot given its new evidence that the EPA is issuing (or encouraging others to issue) permits that contain the TST approach.

      Contrary to Plaintiffs' assertions, this argument is not fully briefed. The use of the 2010 Guidance was added to the background section of Plaintiffs' First Amended Complaint (<u>see</u> FAC ¶¶ 3, 30, 31, 32, 34), but was limited in the later briefing, including the briefing on mootness, to two footnotes. <u>See</u> ECF No. 34 at 7 n.13 (noting the permits EPA previously issued that contain the TST approach and that EPA should not be using the 2010 Guidance as if it were a rule); ECF No. 45 at 6 n.7 ("Plaintiffs fear that EPA will find a new way to require use of the TST, through a new ATP or otherwise"). Plaintiffs did not argue that EPA's use of the 2010 Guidance constituted a live controversy until they filed the pending Motion for Reconsideration. In fact, the bulk of the argument on the 2010 Guidance is contained in the Reply brief and thus there is no governmental response to many of Plaintiffs' claims. Prior to the Motion for Reconsideration, the focus of the briefing in this case was on the circumstances surrounding the ATP approval and not on the 2010 Guidance or any permits that had

---

[11] Plaintiffs later request in their Reply that the TST "should be limited to use as an 'Additional Whole Effluent Toxicity Statistical Approach for Analyzing Acute and Chronic Test Data,' as advertised (AR001812), but not as a replacement method for determining the need for toxicity limits, setting effluent limits, or determining compliance." Pls.' Reply at 8 n.16.

been issued under it.   Under the circumstances, the Court concludes that additional briefing should be permitted to further illuminate the impact, if any, that the new evidence identified by Plaintiffs has in this matter.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Reconsideration (ECF No. 53) is GRANTED.  The parties are directed to file, not later than October 16, 2015, simultaneous briefing on the impact of the recently discovered State Water Board internal memorandum on the issues raised by this matter.  Responses to that initial briefing can be submitted by October 30, 2015.  No reply papers will be permitted.   In the event that oral argument is necessary, a hearing is scheduled for November 12, 2015 at 2:00 p.m.

IT IS SO ORDERED.

Dated:  September 10, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT