UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA ALLIANCE OF PUBLICLY OWNED TREATMENT WORKS, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>    Defendants. | No. 2:14-cv-01513-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

    This case was closed on May 15, 2015, after the Court determined that the action was moot. ECF No. 51. On June 4, 2015, Plaintiffs filed a Motion for Reconsideration based on newly discovered evidence. ECF No. 53. The Court granted that Motion for the limited purpose of obtaining further briefing as to an argument Plaintiffs had raised for the first time in their Reply brief to that Motion. ECF No. 61. For the following reasons, Plaintiffs' Motion for Reconsideration is now DENIED.

///
///
///
///

# BACKGROUND

The Southern California Alliance of Publically Owned Treatment Works ("SCAP") and the Central Valley Clean Water Association ("CVCWA") (collectively "Plaintiffs") are organizations whose members treat and recycle wastewater. Pursuant to the Clean Water Act, Plaintiffs' members must obtain National Pollutant Discharge Elimination System ("NPDES") permits in order to release treated water into the environment. These permits are issued by the California Regional Water Quality Control Boards, the State Water Resources Control Board ("State Water Board"), and sometimes the United States Environmental Protection Agency ("EPA"). However, it is the EPA that promulgates formal test methods for determining whether discharged water is deemed "toxic." The permits contain monitoring requirements that "must be conducted according to test procedures approved under 40 CFR part 136." 40 CFR 122.41(j)(4). The formally approved test procedures include the whole effluent toxicity ("WET") test methods, which measure the biological effects (survival, growth and/or reproduction) on aquatic organisms exposed to environmental samples.

In 2002, the EPA ratified a number of biological WET test methods to be applicable for use in the NPDES program.[1] 67 Fed. Reg. 69,952, Nov. 19, 2002. As part of this modification, EPA added a section to each method's test review manual that included recommended statistical methodologies for analyzing WET test biological data. The WET test manuals recommend, but do not require, select statistical analyses to be applied to WET test results.[2] AR002357.[3]

In 2010, EPA published a guidance document ("2010 Guidance") regarding a new

---

[1] "Beyond assessing WET data for the NPDES Program, WET tests are used to assess toxicity of receiving water . . . and stormwater samples." AR001841.

[2] Plaintiffs dispute this fact and argue that only "formally promulgated statistical method[s]" can be used. Pls.' Reply, ECF No. 57, at 4:6 (citing to the four specified statistical methods for hypothesis testing identified in the 2002 rule).

[3] All citations to the Administrative Record in this Memorandum and Order will be denoted in this format and refer to the record filed with the Court on October 15, 2014. See ECF No. 22.

method of analyzing WET test data for the NPDES program—the Test of Significant Toxicity ("TST"). Pursuant to 40 CFR 136, all WET test methods must be conducted using five concentrations and a control.[4] However, it is possible to conduct the TST statistical approach using only two concentrations: the effluent at the critical concentration and a control. If the effluent and the control differ by an unacceptable amount (the amount that would have a measured detrimental effect on the ability of aquatic organisms to thrive and survive), then the effluent sample is declared toxic.

In May 2013, the Deputy Regional Administrator of EPA's Region 9 sent a memorandum to EPA headquarters asking for clarification of the minimum number of test concentrations required to appropriately utilize the TST approach. AR000030-32. In response, a headquarters representative stated that the two-concentration design was not acceptable as the promulgated WET methods require "a control plus five effluent concentrations under the methods' test acceptability criteria." AR000028.[5] The response went on to state, however, that use of the two-concentration TST approach could be accomplished by use of the Alternate Test Procedure ("ATP") process laid out in 40 CFR parts 136.4 and 136.5. AR000028-29.

An ATP request can either be nationwide (40 CFR 136.4) or for limited use (40 CFR 136.5). While nationwide requests must be approved by the National Coordinator, a limited use request can be approved by the EPA's Regional ATP Coordinator, who has the discretion to restrict the use of the ATP to a specific facility or "to all discharger[s] or facilities (and their associated laboratories) specified in the approval for the Region." 40 CFR 136.5.

On February 12, 2014, the State Water Board asked the Regional ATP Coordinator to approve the two-concentration TST as an ATP for all of California. In

---

[4] Part 136.7 requires that "a permittee/laboratory shall use suitable [quality assurance and quality control] procedures when conducting compliance analyses . . . ." The promulgated 2002 Methods state that toxicity tests generally have "a minimum of five effluent concentrations." AR002679, Section 2.2.2.

[5] The Court notes that this exchange mimicked an informal email chain between Region 9 and EPA headquarters that took place in 2012. See AR000040-43.

3

error, the request referred to 40 CFR 136.4, despite the fact that the request did not ask for the approval of a nationwide ATP.  On March 17, 2014, the EPA approved the two-concentration TST test design as a limited use ATP for NPDES permits issued in California, finding that the two-concentration TST approach was an acceptable equivalent to the five-concentration test evaluated using NOEC-LOEC[6] hypothesis testing.

On June 25, 2014, Plaintiffs filed this action alleging that Defendants EPA and Jared Blumenfeld, as the Regional Administrator of EPA Region 9, (collectively "Defendants") violated the Administrative Procedure Act, 5 U.S.C. §§ 551-559, and regulations implementing the Clean Water Act, 33 U.S.C. §§ 1251-1376.[7]  Specifically, Plaintiffs allege that Defendants illegally and improperly approved the State Water Board's request to use a newly formulated methodology as an ATP.  Plaintiffs filed this action in order to overturn the ATP approval and to obtain a permanent injunction preventing the EPA from "mandating the use of the two-concentration TST or use of analytical results obtained using this non-promulgated method for NPDES compliance determination or other Clean Water Act purposes."  First Am. Compl. ("FAC"), ECF No. 15, Prayer for Relief ¶ E.  Concurrent with the filing of their original complaint, Plaintiffs sought a temporary restraining order from the Court, which was later denied due to delay.  Because there was no restraining order in place, NPDES permits containing the two-concentration TST test were issued while the parties litigated this case.

On February 11, 2015—just before Defendants' Reply to its Cross-Motion for Summary Judgment was due—the EPA withdrew its ATP approval of the two-

///

---

[6] Traditionally, when hypothesis tests are used to analyze toxicity test data, the results of the test are given in two endpoints, the No-Observed-Effect-Concentration (NOEC) and the Lowest-Observed-Effect-Concentration (LOEC).  AR002356.

[7] Alexis Strauss has since been substituted in for Mr. Blumenfeld as the Acting Regional Administrator.  ECF No. 91.

4

concentration TST testing method "effective immediately."[8]  McNaughton Decl., Ex. A, ECF No. 40-1, at 4.  Defendants acknowledged that the withdrawal "arose because of this litigation."  Defs.' Reply, ECF No. 40, at 9:7.  Because of this withdrawal, the Court determined the case to be moot on May 15, 2015.

The Court found that it was "highly unlikely that this exact situation will occur again in the future."  The Court also reasoned that any future case about the issuance of an ATP to approve the two-concentration TST approach would be based on a new record.  ECF No. 51 at 4.  Additionally, the Court stated the allegedly wrongful behavior could not reasonably be expected to reoccur because "[t]he EPA can/not initiate the ATP process . . . . [a]nd there is no indication that the State Water Board will submit another ATP request to the EPA to use the two-concentration TST test method for all of California."  Id. at 6 (internal citations omitted).  Moreover, the Court determined that "[e]ven if the State Water Board were to submit a new ATP request for this exact testing procedure, any decision on that request would be the result of a new proceeding on a new record."  Id. at 5.  Finally, with respect to the permits containing the two-concentration TST approach that had been issued while the litigation was pending, the Court held that state court was the "appropriate venue to challenge the contents of an individual NPDES permit."  Id. at 7.

On June 4, 2015, Plaintiffs filed a Motion for Reconsideration based on newly discovered evidence in the form of a State Water Board internal memorandum ("the Memo") discussing the effect of the EPA's withdrawal of the State Water Board's ATP request on future NPDES permitting.  ECF No. 53-2, Ex. A.  The Memo states that "[t]he three reasons for withdrawal, as described in the rejection letter, are clearly identified as procedural errors" and that the withdrawal was not based on "the substantive TST statistical analysis or the scientific validity of a two-concentration test design."  Id.  The Memo goes on to state that once the EPA makes changes to the ATP regulations

---

[8] Due to the timing of EPA's withdrawal, the Court allowed additional briefing on the issue of mootness.  See ECF No. 44.

through a proposed rulemaking, the State Water Board "will resubmit the ATP request in the proper format." Id.  The Memo provides a table showing that the five-concentration test design must be used for effluent testing but that the two-concentration method can be used for storm water and receiving water as those water sources are not subject to the same five-concentration test requirements found in 40 CFR 136.3.[9]  The Memo concludes by stating:

> With the withdrawal of the two-concentration test design approval, an NPDES permit can still require the TST for statistical analyses, but only the biological responses from the permitted Instream Waste Concentration (IWC) and the control (effluent concentration of zero) are utilized.

Id.

In between the filing of this Motion and the filing of the Reply, Plaintiffs acquired more documentation from a previous Freedom of Information Act ("FOIA") request.[10] Pls.' RJN, ECF No 58.  Plaintiffs argued that these documents showed that the "EPA has demonstrated a clear pattern and practice of utilizing, and encouraging the State to utilize, the 2010 guidance documents to set chronic toxicity permit limits and monitoring requirements." Pls.' Reply at 3.  Accordingly, Plaintiffs urged the Court to retain jurisdiction over this case, and to determine whether the EPA can do so without formally promulgating the TST approach as a recommended WET test statistical analysis approach, like those listed in the 2002 rule.  The TST approach had only been discussed in the 2010 Guidance, and while the EPA was in the process of updating 40 C.F.R. 136, the proposed rule did not contain a reference to the TST approach.  See Clean Water Act Methods Update Rule for the Analysis of Effluent; Proposed Rule, 80 Fed. Reg.

---

[9] This is because the methods manuals for receiving water and storm water recommended a two-concentration experimental design.

[10] The documents include:  recently issued permits that contain the TST statistical analysis (Exhibits A and C); a letter to Plaintiffs' counsel regarding the FOIA request (Exhibit B); an email chain between EPA Region 9 staff members about the withdrawal of the ATP approval (Exhibit D); three orders requiring use of the TST (Exhibits E, I and J); two email chains regarding how the TST approach should be utilized in NPDES permits (Exhibits F and G); a PowerPoint presentation about the TST approach (Exhibit H); and a permit quality review from the State of Hawaii (Exhibit K); and a permit fact sheet for the Guam Waterworks Authority (Exhibit L).

8956 (Feb. 19, 2015), available at http://www.gpo.gov/fdsys/pkg/FR-2015-02-19/pdf/2015-02841.pdf).

Based on this newly raised argument, the Court granted Plaintiff's Motion for Reconsideration for the limited purpose of permitting simultaneous further briefing on the impact of the evidence Plaintiff had identified on the issues raised in this case.  In that Order, however, the Court made clear that because the case "centered entirely around the ATP request and its approval. . . that issue was now moot" given the EPA's withdrawal of the approval.[11]  ECF No. 61 at 10.  It nonetheless went on to conclude that Plaintiff's new argument, "that the TST is not an approved Part 136 method that can be utilized in NPDES permits, and cannot be lawfully approved as an ATP," was not fully briefed and it permitted the parties the opportunity to do so.  Id.

The Court has since received those simultaneous briefs, additional further briefing and an amicus brief.  Having reviewed the record in its entirety, Plaintiffs' Motion is now DENIED on the merits.

## STANDARD

A motion for reconsideration is properly brought pursuant to either Federal Rule of Civil Procedure 59(e) or Rule 60(b).[12]  Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989).  Under Rule 59(e), three grounds may justify reconsideration:  (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.  Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009).

In addition, Rule 60(b) provides:

///

---

[11] The Court's initial decision on Plaintiffs' Motion for Reconsideration is incorporated in its entirety here.  ECF No. 61.

[12] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Further, Local Rule 230(j) requires that a motion for reconsideration state "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion," and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal., Local Rule 230(j)(3)-(4).

It is a well-established maxim that a court should not revisit its own decisions unless extraordinary circumstances show that its prior decision was wrong. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for relief. Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981); see Sheets v. Terhune, No. 1:08-cv-1056-SRB, 2010 WL 1287078, at *1 (E.D. Cal. Mar. 30, 2010) (holding that "[s]uch motions should not be used for the purpose of asking a court 'to rethink what the court had already thought through—rightly or wrongly'"). Motions for reconsideration are therefore not intended to "give an unhappy litigant one additional chance to sway the judge." Kilgore v. Colvin, No. 2:12-cv-1792-CKD, 2013 WL 5425313, at *1 (E.D. Cal. Sept. 27, 2013) (quoting Frito-Lay of P.R., Inc. v. Canas, 92 F.R.D. 384, 390 (D.P.R. 1981)). A motion for reconsideration should not be used to raise arguments or present evidence that could have reasonably been raised or presented earlier. Marlyn Nutraceuticals, 571 F.3d at 880 (citing Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)). In order to succeed, a party making a motion for reconsideration must "set forth facts or law of a strongly convincing

nature to induce the court to reverse its prior decision." Pritchen v. McEwen, No. 1:10-cv-02008-JLT HC, 2011 WL 2115647, at *1 (E.D. Cal. May 27, 2011) (citing Kern-Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 656 (E.D. Cal. 1986) aff'd in part, rev'd in part, 828 F.2d 514 (9th Cir. 1987)).

## ANALYSIS

Plaintiffs bring this Motion for Reconsideration on the basis of the discovery of new evidence. Relief from judgment based on newly discovered evidence is warranted when (1) the moving party provides "newly discovered evidence"; (2) the moving party demonstrates that prior due diligence could not have discovered this evidence; and (3) this new evidence likely would have changed the disposition of the case. Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003). This Court has already determined that Plaintiffs met the first two prongs. ECF No. 61. As such, the focus of this Order is whether Plaintiffs' new evidence would "have been likely to change the disposition of the case." Feature Realty, 331 F.3d at 1093. It would not.

First and foremost, the documents uncovered post-judgment would have had no impact on Plaintiffs' challenge to the ATP approval. While Plaintiffs complain that there is still a live controversy because permits are still being issued containing the two-concentration TST approach, the Court already considered and rejected this argument when it ruled on the parties' original motions for summary judgment. ECF No. 51 at 6; see also ECF No. 61 at 9-10 (reiterating that the TST approach, sometimes with a two-concentration method, had been used in the past and would still possibly be used going forward even absent the ATP). The fact remains that permits are not being issued pursuant to the challenged ATP and that controversy is dead.

In the face of that conclusion, Plaintiffs have now dramatically switched tactics and argue that their case is not moot because "[a]t its core, Plaintiffs . . . fundamentally challenge the ability of the EPA to utilize guidance documents in the same way as a

promulgated rule . . . to regulate Plaintiffs' members' activities." Pls.' Further Brief, ECF No. 67, at 7. More specifically, Plaintiffs contend that the 2010 TST guidance documents are now being impermissibly used as a regulation. Id. at 8-9. Plaintiffs thus seek "a judicial determination . . . stating that the 2010 TST guidance documents cannot be used as a rule unless and until subjected to notice and comment rulemaking procedures provided by the APA." Id. at 9. The problem with this argument is that Plaintiffs did not plead such a claim in their First Amended Complaint.[13]

Plaintiffs of course attempt to argue to the contrary, reasoning that "[b]ecause of a grave concern that [permits might still issue even if the ATP approval was withdrawn], Plaintiffs raised in their Complaint the issue of the 2010 TST guidance documents being used as a regulation before being properly incorporated into the applicable regulations." Id. (citing FAC, ¶¶ 3, 22, 30, 31, 32 and 34). Plaintiffs would thus have the Court conclude that "even outside of the issue of the approval of the ATP, Plaintiffs adequately pled the issue of the use of the TST guidance to set effluent limitations and monitoring requirements in . . . NPDES . . . permits." Id. Not so.

Throughout this entire case, through both complaints, through briefing on Plaintiffs' request for preliminary injunctive relief, through briefing on the parties' cross-motions for summary judgment, and even most of the way through the original briefing on Plaintiffs' Motion for Reconsideration, the only issue Plaintiffs raised was the EPA's approval of the ATP. It was not until Plaintiff's filed their Reply to their Motion for Reconsideration that they switched gears. Before then, Plaintiffs never argued that Defendants were impermissibly relying on guidance documents to justify decisions.

Indeed, Plaintiffs gave the 2010 TST guidance documents barely a mention in the FAC. For example, while Plaintiffs do cite the documents in the "Legal Background"

---

[13] "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007) (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.

section of their pleading, it is clearly by way of <u>background</u> only, to show that because Defendants could not rely on the guidance as a regulation, they concocted the challenged ATP strategy instead.  Moreover, the guidance documents were not referenced at all in the "Factual Background" pertaining to the instant action, and all of the claims for relief focused only on ATP approval.  There is simply no plausible reading of the FAC that supports the conclusion that Plaintiffs were challenging anything other than the EPA's actions in approving the ATP.

The parties' course of conduct also makes clear that neither side believed Plaintiffs were challenging Defendants' reliance on guidance documents as opposed to the ATP approval.  Throughout extensive briefing on multiple issues, the guidance documents were never raised as a basis for Plaintiffs' requested relief.  Nor did Plaintiffs include any claim based on the guidance documents in the parties' joint status report. <u>See</u> ECF No. 18.

This makes sense because throughout this case, the permits were being issued pursuant to the ATP.  There was no reason to challenge the EPA's reliance on the guidance documents because those documents were not being used to justify issuing permits.  Indeed, even if Plaintiffs had wanted to raise such a challenge in their FAC, any such claim would have been speculative and unripe at the time.

Because Plaintiffs failed to adequately allege a claim challenging Defendants' reliance on the 2010 TST guidance documents, they cannot pursue that claim now.  It was simply too late to pursue a new claim once summary judgment had been granted and the parties had reached the tail end of briefing on Plaintiffs' Motion for Reconsideration.  <u>See</u>, <u>e.g.</u>, <u>Navajo Nation v. U.S. Forest Service</u>, 535 F.3d 1058, 1080 (9th Cir 2008) ("[O[ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.").[14]

---

[14] The Court also notes that Plaintiffs never properly moved for leave to amend the FAC to add a proper claim and mentioned only in various footnotes that, if the Court found its pleading lacking, leave to amend should be granted.  <u>See</u> Fed. R. Civ. P. 15(b).

The Court's order granting Defendants' Motion for Summary Judgment was thus proper and Plaintiffs' Motion for Reconsideration is DENIED.[15]

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Reconsideration (ECF No. 53) and Defendants' Motion to Strike (ECF No. 75) are DENIED.

IT IS SO ORDERED.

Dated:  August 22, 2016

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[15] Defendants' related Motion to Strike (ECF No. 75) is DENIED as moot.  Plaintiffs' requests for judicial notice, on the other hand, are GRANTED in part and DENIED in part.  The Court considered that evidence that went to support Plaintiffs' argument that its ATP approval challenge was not moot.  The Court did not consider evidence offered in support of Plaintiffs' unpleaded guidance document claim.