UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA ALLIANCE OF PUBLICLY OWNED TREATMENT WORKS and CENTRAL VALLEY CLEAN WATER ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ALEXIS STRAUSS, ACTING REGIONAL ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION IX,<br><br>Defendants. | No.  2:14-cv-01513-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

This case was closed on May 15, 2015 after the Court determined that the action was moot.  ECF No. 51.  On June 4, 2015, Plaintiffs filed a Motion for Reconsideration based on newly discovered evidence.  ECF No. 53.  The Court granted that Motion for the limited purpose of obtaining further briefing as to an argument Plaintiffs had raised for the first time in their reply brief to that motion.  ECF No. 61.  After considering the additional briefing, the Court denied Plaintiffs' Motion for Reconsideration.  ECF No. 94.  Plaintiffs now file for a Motion to Reopen Judgment so that they can amend their complaint.  ECF No. 95.  For the following reasons, Plaintiffs' Motion to Reopen Judgment is DENIED.

## BACKGROUND

The Southern California Alliance of Publically Owned Treatment Works ("SCAP") and the Central Valley Clean Water Association ("CVCWA") are organizations whose members treat and recycle wastewater. Pursuant to the Clean Water Act, Plaintiffs' members must obtain National Pollutant Discharge Elimination System ("NPDES") permits in order to release treated water into the environment. These permits are issued by the California Regional Water Quality Control Boards, the State Water Resources Control Board ("State Water Board"), and sometimes the United States Environmental Protection Agency ("EPA"). However, it is the EPA that promulgates formal test methods for determining whether discharged water is deemed "toxic." The permits contain monitoring requirements that "must be conducted according to test procedures approved under 40 CFR part 136." 40 CFR 122.41(j)(4). The formally approved test procedures include the whole effluent toxicity ("WET") test methods, which measure the biological effects (survival, growth, and/or reproduction) on aquatic organisms exposed to environmental samples.

In 2002, the EPA ratified a number of biological WET test methods to be applicable for use in the NPDES program.[1] 67 Fed. Reg. 69,952, Nov. 19, 2002. As part of this modification, EPA added a section to each method's test review manual that included recommended statistical methodologies for analyzing WET test biological data. The WET test manuals recommend, but do not require, select statistical analyses to be applied to WET test results.[2] AR 002357.[3]

---

[1] "Beyond assessing WET data for the NPDES Program, WET tests are used to assess toxicity of receiving water . . . and stormwater samples." AR001841.

[2] Plaintiffs dispute this fact and argue that only "formally promulgated statistical method[s]" can be used. Pls.' Reply, ECF No. 57, at 4:6 (citing to the four specified statistical methods for hypothesis testing identified in the 2002 rule).

[3] All citations to the Administrative Record in this Memorandum and Order will be denoted in this format and refer to the record with the Court on October 15, 2014. See ECF No. 22.

In 2010, the EPA published a guidance document ("2010 Guidance") regarding a new method of analyzing WET test data for the NPDES program—the Test of Significant Toxicity ("TST"). Pursuant to 40 CFR 136, all WET test methods must be conducted using five concentrations and a control.[4] However, it is possible to conduct the TST statistical approach using only two concentrations: the effluent at the critical concentration and a control. If the effluent and the control differ by an unacceptable amount (the amount that would have a measured detrimental effect on the ability of aquatic organisms to thrive and survive), then the effluent sample is declared toxic.

In May 2013, the Deputy Regional Administrator of the EPA's Region 9 sent a memorandum to EPA headquarters asking for clarification on the minimum number of test concentrations required to appropriately utilize the TST approach. AR 000030-32. In response, a headquarters representative stated that the two-concentration design was not acceptable as the promulgated WET methods require "a control plus five effluent concentrations under the methods' test acceptability criteria." AR000028.[5] The response went on to state, however, that use of the two-concentrations TST approach could be accomplished by use of the Alternate Test Procedure ("ATP") process laid out in 40 CFR parts 136.4 and 136.5. AR000028-29.

An ATP request can either be nationwide (40 CFR 136.4) or for limited use (40 CFR 136.5). While nationwide requests must be approved by the National Coordinator, a limited use request can be approved by the EPA's Regional ATP Coordinator, who has the discretion to restrict the use of the ATP to a specific facility or "to all discharger[s] or facilities (and their associated laboratories) specified in the approval for the Region." 40 CFR 136.5.

///

---

[4] Part 136.7 requires that "a permittee/laboratory shall use suitable [quality assurance and quality control] procedures when conducting compliance analyses . . . ." the promulgated 2002 Methods state that toxicity tests generally have "a minimum of five effluent concentrations." AR002679, § 2.2.2.

[5] The Court notes that this exchanged mimicked an informal email chain between Region 9 and EPA headquarters that took place in 2012. See AR000040-43.

On February 12, 2014, the State Water Board asked the Regional ATP Coordinator to approve the two-concentration TST as an ATP for all of California. In error, the request referred to 40 CFR 136.4, despite the fact that the request did not ask for the approval of a nationwide ATP. On March 17, 2014, the EPA approved the two-concentration TST test design as a limited use ATP for NPDES permits issued in California, finding that the two-concentration TST approach was an acceptable equivalent to the five-concentration test evaluated using NOEC-LOEC[6] hypothesis testing.

On June 25, 2014, Plaintiffs filed this action alleging that Defendants EPA and Jared Blumenfled, as the Regional Administrator of EPA Region 9, violated the Administrative Procedure Act, 5 U.S.C. §§ 551–59, and regulations implementing the Clean Water Act, 33 U.S.C. §§ 1251–376.[7] Specifically, Plaintiffs allege that Defendants illegally and improperly approved the State Water Board's request to use a newly formulated methodology as an ATP. Plaintiffs filed this action in order to overturn the ATP approval and to obtain a permanent injunction preventing the EPA from "mandating the use of the two-concentration TST or use of analytical results obtained using this non-promulgated method for NPDES compliance determination or other Clean Water Act purposes." First Am. Compl. ("FAC"), Prayer for Relief ¶ E, ECF No. 15. Concurrent with the filing of their original complaint, Plaintiffs sought a temporary restraining order from the Court, which was later denied due to delay. Because there was no restraining order in place, NPDES permits containing the two-concentration TST were issued while the parties litigated this case.

On February 11, 2015—just before Defendants' Reply to its Cross-Motion for Summary Judgment was due—the EPA withdrew its ATP approval of the two-

---

[6] Traditionally, when hypothesis tests are used to analyze toxicity test data, the results of the test are given in two endpoints, the No-Observed-Effect-Concentration (NOEC) and the Lowest-Observed-Effect-Concentration (LOEC). AR002356.

[7] Alexis Strauss has since been substituted in for Mr. Blumenfeld as the Acting Regional Administrator. ECF No. 91.

4


concentration TST testing method "effective immediately."[8]  McNaughton Decl., ECF No. 40-1, Ex. A, at 4.  Defendants acknowledged that the withdrawal "arose because of this litigation."  Defs.' Reply, ECF No. 40, at 9:7.  Because of this withdrawal, the Court determined the case to be moot on May 15, 2015.

The Court found that it was "highly unlikely that this exact situation will occur again in the future."  The Court also reasoned that any future case about the issuance of an ATP to approve the two-concentration TST approach would be based on a new record.  ECF No. 51, at 4.  Additionally, the Court stated the allegedly wrongful behavior could not reasonably be expected to reoccur because "[t]he EPA cannot initiate the ATP process . . . [a]nd there is no indication that the State Water Board will submit another ATP request to the EPA to use the two-concentration TST test method for all of California."  Id. at 6 (citations omitted).  Moreover, the Court determined that "[e]ven if the State Water Board were to submit a new ATP request for this exact testing procedure, any decision on that request would be the result of a new proceeding on a new record."  Id. at 5.  Finally, with respect to the permits containing the two-concentration TST approach that had been issued while litigation was pending, the Court held that state court was the "appropriate venue to challenge the contents of an individual NPDES permit."  Id. at 7.

On June 4, 2015, Plaintiffs filed a Motion for Reconsideration based on newly discovered evidence in the form of a State Water Board internal memorandum ("the Memo") discussing the effect of the EPA's withdrawal of the State Water Board's ATP request on future NPDES permitting.  ECF No. 53-2, Ex. A.  The Memo states that "[t]he three reasons for withdrawal, as described in the rejection letter, are clearly identified as procedural errors" and that the withdrawal was not based on "the substantive TST statistical analysis or the scientific validity of a two-concentration test design."  Id.  The Memo goes on to state that once the EPA makes changes to the ATP regulations,

---

[8] Due to the timing of the EPA's withdrawal, the Court allowed additional briefing on the issue of mootness.  See ECF No. 44.

through a proposed rulemaking, the State Water Board "will resubmit the ATP request in the proper format." Id. The Memo provides a table showing that the five-concentration test design must be used for effluent testing, but that the two-concentration method can be used for storm water and receiving water as those water sources are not subject to the same five-concentration test requirements found in 40 CFR 136.3.[9] The Memo concludes by stating:

> With the withdrawal of the two-concentration test design approval, an NPDES permit can still require the TST for statistical analyses, but only the biological responses from the permitted Instream Waste Concentration (IWC) and the control (effluent concentration of zero) are utilized.

Id.

After Plaintiffs' filing of the original Motion for Reconsideration, Plaintiffs acquired more documentation from a previous Freedom of Information Act ("FOIA") request.[10] Pls.' RJN, ECF No. 58. Plaintiffs argued that these documents showed that the "EPA has demonstrated a clear pattern and practice of utilizing, and encouraging the State to utilize, the 2010 guidance documents to set chronic toxicity permit limits and monitoring requirements." Pls.' Reply 3. Accordingly, Plaintiffs urged the Court to retain jurisdiction over this case, and to determine whether the EPA can do so without formally promulgating the TST approach as a recommended WET test statistical analysis approach, like those listed in the 2002 rule. The Test approach had only been discussed in the 2010 Guidance, and while the EPA was in the process of updating 40 CFR 136, the proposed rule did not contain a reference to the TST approach. See Clean Water

///

---

[9] This is because the methods manuals for receiving water and storm water recommended a two-concentration experimental design.

[10] The documents include: recently issued permits that contain the TST statistical analysis (Exhibits A and C); a letter to Plaintiffs' counsel regarding the FOIA request (Exhibit B); an email chain between EPA Region 9 staff members about the withdrawal of the ATP approval (Exhibit D); three orders requiring the use of the TST (Exhibits E, I, and J); two email chains regarding how the TST approach should be utilized in NPDES permits (Exhibits F and G); a PowerPoint presentation about the TST approach (Exhibit H); a permit quality review form the State of Hawaii (Exhibit K); and a permit fact sheet for the Guam Waterworks Authority (Exhibit L).

Act Methods Update Rule for the Analysis of Effluent; Proposed Rule, 80 Fed. Reg.8956 (Feb. 19, 2014), http://www.gpo.gov/fdsys/pkg/FR-2015-02-19/pdf/2015-02841.pdf.

Based on this newly raised argument, the Court granted Plaintiffs' Motion for Reconsideration for the limited purpose of permitting simultaneous further briefing on the impact of the evidence Plaintiffs had identified on the issues raised in this case. In that Order, however, the Court made clear that because the case "centered entirely around the ATP request and its approval, . . . that issue was now moot" given the EPA's withdrawal of the approval.[11] ECF No. 61, at 10. It nonetheless went on to conclude that Plaintiffs' new argument "that the TST is not an approved Part 136 method that can be utilized in NPDES permits, and cannot be lawfully approved as an ATP" was not fully briefed and it permitted the parties the opportunity to do so. Id.

After considering those simultaneous briefs, additional further briefing, and an amicus brief, the Court denied the Motion for Reconsideration on its merits. ECF No. 94. The Court found that the newly discovered evidence had "no impact on Plaintiffs' challenge to the ATP approval." Id. at 9. Instead, "Plaintiffs ha[d] dramatically switched tactics" to focus on the use of the TST method as a whole. Id. at 9–10. Specifically, Plaintiffs alleged that the 2010 Guidance, not the ATP, was being used impermissibly to implement the TST method. Id. at 10. Plaintiffs now file a Motion to Reopen the Judgment so that they can amend their complaint to include this new claim.

## STANDARD

A motion to reopen judgment is properly brought under Federal Rules of Civil Procedure 59(e) or 60(b).[12] Lindauer v. Rogers, 91 F.3d 1355, 1357 (9th Cir. 1996).

///

---

[11] The Court's initial decision on Plaintiffs' Motion for Reconsideration is incorporated in its entirety here. ECF No. 61.

[12] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

After final judgment has been entered, a complaint can be amended only after the judgment is reopened under either of those two rules. Id.

Under Rule 59(e), three grounds may justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009). Furthermore, such a motion "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Such a motion can only be made "within a reasonable time." Id. 60(c)(1). Furthermore, "for reasons (1), (2), and (3)" the motion can be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Id.

It is a well-established maxim that a court should not revisit its own decisions unless extraordinary circumstances show that its prior decision was wrong. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for relief. Twentieth Century-Fox Film Corp. b. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981); see also Sheets v. Terhune, No. 1:08-cv-1056-SRB, 2010 WL 1287078, at *1 (E.D. Cal. Mar. 30, 2010 ("Such motions should not be used for the purpose of asking a court 'to rethink what the court had already thought through—rightly or wrongly.'"). Motions for reconsideration are therefore not intended to "give an unhappy litigant one additional chance to sway the judge." Kilgore v. Colvin, No. 2:12-cv-1792-CKD, 2013 WL

1  5425313, at *1 (E.D. Cal. Sept. 27, 2013) (quoting Frito-Lay of P.R., Inv. v. Canas,
2  92 F.R.D. 384, 390 (D.P.R. 1981)). A motion for reconsideration should not be used to
3  raise arguments or present evidence that could have reasonably been raised or
4  presented earlier. Marlyn Nutraceuticals, 571 F.3d at 880 (citing Kona Enters., Inc. v.
5  Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)). In order to succeed, a party
6  making a motion for reconsideration must "set forth facts or law of a strongly convincing
7  nature to induce the court to reverse its prior decision." Pritchen v. McEwen, No. 1:10-
8  cv-02008-JLT HC, 2011 WL 2115647, at *1 (E.D. Cal. May 27, 2011) (citing Kern-Tulare
9  Water Dist. v. City of Bakersfield, 634 F. Supp. 656 (E.D. Cal. 1986) aff'd in part, rev'd in
10 part, 828 F.2d 514 (9th Cir. 1987)).

## ANALYSIS

Plaintiffs bring this Motion to Reopen Judgment under both Rules 59 and 60, but any motion made under Rule 59 is untimely. Rule 59(e) requires that any such motion be made within 28 days of the entry of judgment. Final judgment was entered on May 15, 2015, ECF No. 52, and Plaintiffs brought this motion over a year later, on September 9, 2016, ECF No. 95. Thus, the Court has no authority to entertain a Rule 59 motion, for the time limitation on Rule 59 motions cannot be waived by any court. See Fed. R. Civ. P. 5(b)(2); Carter v. United States, 973 F.2d 1479, 1488 (9th Cir. 1992) (citing Browder v. Dir., Dep't of Corr., 434 U.S. 257, 261 n.5 (1978)).[13]

Plaintiffs' Rule 60 motion is grounded upon a claim of excusable neglect. Pls.' Mot. to Reopen J., at 9:6–7. A Rule 60 motion brought on such a basis must be brought within a year of "the entry of the judgment or order or the date of the proceeding." Fed.

---

[13] Plaintiffs claim that the time available to file Rule 59(e) motions is measured from the denial of their original motion for reconsideration. Pls.' Mot. to Reopen J. at 7:11–22. This is incorrect. To hold as such would be to allow parties to file unlimited successive motions for reconsideration, which makes little sense in the face of Rule 59's strict, non-discretionary time limits. Cf. Wages v. I.R.S., 915 F.2d 1230, 1234 n.3 (9th Cir. 1990) (analyzing successive Rule 59 motions in the context of finality for appeals purposes).

1  R. Civ. P. 60(c)(1).  As with Rule 59 motions, the Court lacks discretion to extend the
2  time for Rule 60 motions.  <u>See</u> Fed. R. Civ. P. 5(b)(2).  However, unlike Rule 59, Rule 60
3  applies not only to final judgments, but also to orders and proceedings.  <u>See</u> Fed. R. Civ.
4  P. 60(b).  Thus, the Plaintiffs' Rule 60 motion can only be interpreted as a motion for the
5  Court to reconsider its original denial to reconsider the judgment.

6  It is unclear, however, exactly how excusable neglect could warrant reconsidering
7  that order.  Plaintiffs argue that their "failure to plead allegations concerning the use of
8  the 2010 Guidance to the Court's satisfaction was an inadvertent mistake based upon
9  Plaintiffs' reliance on the Court's September 2015 order."  Pls.' Mot. to Reopen J. at 9:6–
10 7.  The Court had granted summary judgment based on Plaintiffs' challenge to the ATP
11 becoming moot, and Plaintiffs moved for reconsideration.  The September 2015 order
12 allowing additional briefing on that motion clearly stated that the issue before the Court
13 had only ever been the validity of the ATP, not a general "risk of obtaining permits under
14 the TST testing method."  Mem. & Order, ECF No. 61, at 9:13–15.  It further clarified that
15 "[t]he Court was not under the illusion that withdrawal of the ATP approval would also
16 withdraw the 2010 Guidance document that discussed the TST as an available statistical
17 method."  <u>Id.</u> at 9:18–19.  The September 2015 order granted Plaintiffs' original motion
18 for reconsideration for the limited purpose of whether their newly discovered evidence
19 made the ATP challenge no longer moot.  <u>Id.</u> at 10:10–12.  That order made clear that
20 the Court considered the ATP's validity the sole basis of Plaintiffs' claims against the
21 EPA.

22 Indeed, at no point prior to Plaintiffs' reply brief on their motion to reconsider did
23 they shift toward challenging the 2010 Guidance.  Plaintiffs chose to litigate on the
24 narrow issue of the ATP's validity.  Changing tactics in a reply brief on a motion to
25 reconsider can in no way be construed as excusable neglect, much less blamed on the
26 Court's September 2015 order.  Plaintiffs' tactical choice to narrow their focus to the ATP
27 approval provides no basis for this Court to reopen judgment more than a year after the
28 granting of summary judgment.

Plaintiffs nonetheless argue that the Court should "liberally construe[ Rules] 59 and 60 in order to 'accomplish justice.'" Pls.' Mot. to Reopen J. at 7:23–24 (quoting Klapprott v. United States, 335 U.S. 601, 614–15 (1949)). In support of their claim that reopening the judgment would "accomplish justice," Plaintiffs argue that leave to amend is "critical because . . . the statute of limitations for a direct challenge to the 2010 Guidance ran in June 2016." Pls.' Mot. to Reopen J. at 7:2–4; see also 28 U.S.C. § 2401(a) (setting out a six-year statute of limitations for "every civil action commenced against the United States"). This argument is unavailing.

As this Court noted in ultimately denying Plaintiffs' original motion for reconsideration, a challenge in Plaintiffs' FAC that alleged the EPA improperly relied on the 2010 Guidance to issue permits "would have been speculative and unripe at the time" of Plaintiffs' FAC. Mem. & Order, ECF No. 94, at 11:17–18. That is because Plaintiffs had only alleged that the EPA was impermissibly relying on the ATP to issue such permits, and not that permits were being issued based on the 2010 Guidance. If Plaintiffs are now alleging that the EPA is relying on the 2010 Guidance in a way that it was not when the ATP was in effect, then the statute of limitations on such allegations would not have started running until that change occurred. This is because the statute of limitations only begins to run "after the right of action first accrues." 28 U.S.C. § 2401(a).[14] Under Acri v. International Association of Machinists, 781 F.2d 1393 (9th Cir. 1986), any cause of action based on the EPA using the 2010 Guidance in a new way in response to the revocation of the ATP would likely have not accrued until—at the very earliest—the ATP was revoked in February 2015. The EPA cannot avoid review by shifting the bases of its actions until the statute of limitation on challenging the issuance of its regulatory documents runs. The EPA's actions can remain open to challenge on an "as applied" basis when regulations are used in new ways.

///

---

[14] For a more extensive discussion of the statute of limitations for challenges under the APA, see Utu Utu Gwaitu Paiute Tribe v. Dep't of Interior, 766 F. Supp. 842, 844–47 (E.D. Cal. 1991).

If indeed Plaintiffs do allege that the EPA is relying on the 2010 Guidance in a new way, then Plaintiffs are free to file a new suit against the EPA. It makes no sense, however, to clumsily tack such a new claim to their original ATP challenge via a motion for reconsideration of a prior motion for reconsideration. Should Plaintiffs decide to file a new suit in this Court, they are hereby directed to file a Notice of Related Cases under Local Rule 123, which will ensure that the case is assigned to the undersigned Judge.

The parties are cautioned, however, not to rely on this ruling as actually disposing of a hypothetical statute of limitations question not yet before the Court. The Court is not now in a position to determine whether the statute of limitations bars any claims Plaintiffs may bring in a new suit. Since it is not clear exactly what allegations Plaintiffs' new claims might contain and the statute of limitations issue has not been briefed before the Court, any such ruling would be premature.

For example, if, contrary to the Court's understanding, Plaintiffs wish now to challenge the issuance of the 2010 Guidance in addition to their original challenge to the ATP, then they are likely correct that their claims are time-barred. As discussed above, the Court's September 2015 order made clear that "[t]he Court was not under the illusion that withdrawal of the ATP approval would also withdraw the 2010 Guidance document that discussed the TST as an available statistical method." Mem. & Order, ECF No. 61, at 9:18–20. That said, any strategic error is ultimately attributable to Plaintiffs, and they cannot now avoid the statute of limitations by expanding the scope of their challenge now that their tactical decision to take a narrow focus did not achieve everything they had hoped it might.

///
///
///
///
///
///

**CONCLUSION**

For the reasons articulated above, Plaintiffs' Motion to Reopen the Judgment, ECF No. 95, is DENIED. If Plaintiffs file a new suit based on the EPA's reliance on the 2010 Guidance, Plaintiffs shall file a Notice of Related Cases pursuant to Local Rule 123.

IT IS SO ORDERED.

Dated: October 19, 2016

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE